## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

September 15, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

GODWIN AIRCRAFT, INC.,           )
a Tennessee Corporation,          )
                                  )
    Plaintiff/Appellee,        ) Shelby Circuit No. 76548 T.D.
                                  )
VS.                               ) Appeal No. 02A01-9708-CV-00187
                                  )
WAYNE WALKER,                     )
                                  )
    Defendant/Appellant.       )

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE KAREN R. WILLIAMS, JUDGE

**ALAN E. GLENN**
Memphis, Tennessee
Attorney for Appellant

**MICHAEL RICHARDS**
**BAKER, DONELSON, BEARMAN & CALDWELL**
Memphis, Tennessee
Attorney for Appellee

**REVERSED AND RENDERED**

                                   **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**
    Defendant/appellant appeals the judgment of the trial court finding him 90% at fault

for damages to plaintiff/appellee's airplane. Plaintiff/appellee raises an issue regarding the trial court's finding that it was 10% at fault. For reasons stated hereinafter, we reverse the judgment of the trial court finding plaintiff/appellee to be 10% at fault.

Plaintiff/appellee, Godwin Aircraft, Inc. ("appellee"), is engaged in the business of selling and/or leasing private aircraft. On September 25, 1995, defendant/appellant, Wayne Walker ("appellant"), leased a 1974 58 Series Beechcraft Baron from appellee for $225 per hour. This aircraft is a twin engine plane with retractable landing gear. Upon returning from a trip to Vicksburg, Mississippi, appellant landed the aircraft at General Dewitt Spain Airport in Memphis, Tennessee. After taxiing down the runway approximately 1800 feet, intending to raise the flaps, appellant reached over and pulled the landing gear retraction lever instead. This resulted in the retraction of the landing gear thereby causing damage to the aircraft as a consequence of the contact with the ground by both the body of the airplane and its rotating propellers.

On this airplane there is a mechanical device called a squat switch that when working properly, prevents an airplane landing gear from retracting when on the ground. In this instance, the squat switch did not work as evidenced by the airplane's descent upon the activation of the landing gear retraction lever by appellant.

Appellant is a full-time, professional pilot, with approximately 9,000 hours of total flight time. He has been a flight instructor for more than 20 years and has flown between 800 and 1,000 hours in Beechcraft Baron aircrafts. In particular, appellant has flown the specific airplane in question approximately 25-30 hours.

The flap lever is located to the left of the middle control panel in the 1974 Beechcraft Baron 58 series. It is flat and of a different color from the landing gear retraction lever. The landing gear retraction lever is approximately 14 inches to the right of the flap lever on the opposite side of the middle control panel. In contrast to the flap lever, the landing gear retraction lever is round in shape and white in color.

2

At trial, appellant admitted that touching the landing gear retraction lever while the aircraft is on the ground violates a cardinal rule of safety, pilot checklist procedures, and FAA Guidelines. Indeed, he acknowledged that as a flight instructor he would always caution his students to never move the landing gear retraction lever while the airplane was on the ground because airplanes were subject to mechanical problems. Appellant explained that these mechanical problems can sometimes result in retraction of the landing gear in spite of the implementation of safety devices to prevent such occurrences.

After the accident, the airplane was inspected by Glen Mitchell, an A&P mechanic with 53 years experience. Mitchell was assisted by another A&P mechanic, William Bryner, to place jacks under the airplane and determine whether or not the squat switch on the airplane was in working order. Mitchell testified that he jacked the airplane up off the ground, placed a jack under the left landing gear strut, raised it approximately 1 inch, and marked the position to determine where the strut should be for on-the-ground operation. Mitchell and Bryner then jacked the airplane down to place weight on the strut thereby activating the squat switch. The squat switch warning horn sounded, and the switch operated thereby disabling the landing gear from retracting.

Appellee filed this suit alleging negligence, breach of express contract, and breach of bailment contract as seen in Tenn. Code Ann. § 24-5-111. Appellant filed his answer admitting his negligence, but persisted to lay blame on appellee for the failing squat switch. Appellant, in his answer, contended that no express contract existed with appellee. He further denied the existence of a bailment situation between the parties. The trial in this matter was had on July 7, 1997, in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis.Judge Karen Williams presided.Judge Williams heard the testimony of appellee and appellant, two mechanics who inspected the airplane's safety device after the incident occurred, and several other witnesses.

At the conclusion of the trial, the trial court found that appellee's airplane had sustained damages in the amount of $31,212.00, but found that appellee was 10% at fault

in this matter and thereby reduced the judgment by 10% for a total judgment of $28,091.00. More specifically, the trial court stated:

> On the other hand, I believe this is a comparative fault case. If the fail-safe system had worked, the plane could not have crashed. So at that moment that system wasn't working. But nothing would have gone wrong had not the defendant pulled the wrong lever.

Similarly, the trial court, in its final judgment, provided in pertinent part:

> From all of which the Court finds that Plaintiff is guilty of comparative negligence in the amount of 10% and Defendant is guilty of comparative negligence in the amount of 90%.

This appeal followed.

This case was tried by a court sitting without a jury. Thus, we review the case de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R. App. P. 13(d).

Several procedural issues arise out of the facts of this case, particularly, whether principles of comparative fault apply to bailment situations and whether comparative fault was, indeed, plead by appellant, and if not whether the issue of comparative fault was tried with the implied consent of the parties under Tenn. R. Civ. P. 15.02. However, these issues are of no consequence in this matter. Although, clearly, appellee owed a duty of due care when leasing appellant the airplane in question, there is insufficient evidence in the record of appellee's negligence in breaching this duty. This is true regardless of whether one analyzes the facts in this matter under bailment doctrine or under a negligence/comparative negligence line of reasoning.

More specifically, appellee's breach of bailment contract claim under Tenn. Code Ann. § 24-5-111 involves negligence. Tenn. Code Ann. § 24-5-111 provides:

> In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee in good condition and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, provided

4

the loss or damage was not due to the inherent nature of the property bailed.

There is ample evidence that appellee delivered the airplane "in good condition." On one hand, appellant contends that the facts in this case do not fall within the parameters of the above statute because of the failure of the squat switch on appellee's airplane, but on the other hand, appellant admits in his answer that the airplane was delivered "in good condition." It is the opinion of this Court that the evidence in the record evinces that the airplane was delivered in good condition. The airplane passed its annual inspections as required by the FAA, and the squat switch was operable upon inspection after the incident at issue occurred. As such, under Tenn. Code Ann. § 24-5-111, this constitutes prima facie evidence that the appellant was negligent in returning the airplane in the damaged condition. Appellant fails to rebut this evidence. In fact, he admits the fact that he was negligent, but insist that appellee should be held responsible for the damage to the airplane because of the failure of the squat switch on said plane. In doing so, however, appellant fails to set forth any evidence in the record to persuade this Court to hold appellee responsible for any amount of the damages to the airplane.

Along these lines, appellant contends that appellee has failed in its duty to inspect the airplane under 8 Am Jur 2d § 165, "Bailments." Section 165 provides in pertinent part:

> **Section 165. Bailor's duty to inspect.** If the subject of a bailment for hire is of such a nature that its use threatens serious danger to others unless it is in good condition, there is a positive duty on the part of the bailor to take reasonable care to ascertain its condition by inspection. Failure to do so may be negligence without actual knowledge on the part of the bailor of any defect or of facts sufficient to stimulate investigation.

Appellant once again has failed to document any evidence in the record of appellee's failure to positively inspect the airplane. In fact, quite the opposite is true. The evidence displayed in the record illustrates that appellee's airplane passed its yearly FAA inspections and, indeed, passed the post-accident inspection performed by A&P mechanics Mitchell and Bryner. In light of this, we see no basis to support a 10% reduction of judgment from appellee.

5

In summary, whether the trial court proceeded under a negligence/comparative negligence line of reasoning or under the doctrine of bailment is inconsequential. The result in this case is the same. What is noticeably absent from the record and ultimately fatal to appellant's case is the fact that there is absolutely no evidence that appellee was negligent. The mere failure of the squat switch in appellee's airplane is not negligence in and of itself. Indeed, appellant admitted that there are a "large amount of mechanical problems with airplanes," in fact, causing the landing gear to retract while on the ground despite the implementation of safety systems to prevent such from occurring. Undoubtedly, appellee had a duty of due care in leasing the airplane in question to appellant. However, the record is devoid of any evidence that appellee breached this duty. There is no evidence of appellee's failure to inspect the airplane or that appellee knew or should have known that the squat switch in the airplane was defective. There is no evidence by appellant of appellee's inspection process or lack thereof. There is no evidence by appellant of directives from the FAA or Beechcraft as to required inspections or the frequency of such, if required. Without evidence of appellee's breach of his duty of due care toward appellant, appellee cannot be held responsible for 10% of the damage to his airplane.

Accordingly, we reverse the judgment of the trial court and render judgment for appellee in the amount of $31,212.00. Costs are taxed to appellant, for which execution may issue if necessary.

---

HIGHERS, J.

6

CONCUR:

_____
FARMER, J.


_____
LILLARD, J.